**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MONIQUE MAYERS, | |
| Plaintiff, | Civil Action No. 1:26-cv-02437-VMC |
| v. | |
| CURTIS JAMES JACKSON III, a/k/a "CURTIS JACKSON" a/k/a "50 CENT," a/k/a "FIF," a/k/a "FIFTY," | |
| Defendant. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

A.  PRELIMINARY STATEMENT.........................................................................1

B.  FACTUAL BACKGROUND ...........................................................................2

C.  ARGUMENT ...................................................................................................4

    1.  This Court Does Not Have Personal Jurisdiction Over Jackson,
    a Texas Resident ......................................................................................4

        a.  Jackson is not subject to personal jurisdiction under Georgia's
        long-arm statute ................................................................................5

        b.  Due process considerations do not allow the exercise of personal
        jurisdiction over Jackson ...................................................................8

    2.  Plaintiff Fails to State a Claim for Relief Against Jackson ...................11

        a.  The claims are time-barred in part (before April 29, 2024) under
        Georgia's two-year statute of limitations ........................................11

        b.  Count I for IIED should be dismissed with prejudice ......................14

        c.  Count II for invasion of privacy by intrusion upon seclusion should
        be dismissed with prejudice..............................................................22

    3.  Jackson Should Be Awarded His Attorneys' Fees and Expenses .........25

D.  CONCLUSION...............................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. A. Atlanta Autosave, Inc.*,
    272 Ga. App. 73 (2005) ...................................................................................15

*Anderson v. Deas*,
    279 Ga. App. 892 (2005) ...................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................9, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................11

*Benedict v. State Farm Bank, FSB*,
    309 Ga. App. 133 (2011) ...........................................................................22, 24

*Brooks v. Branch Banking & Trust Co.*,
    107 F. Supp. 3d 1290 (N.D. Ga. 2015)..............................................................21

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)......................................................................................10

*Calder v. Jones*,
    465 U.S. 783 (1984)......................................................................................10

*Data Tech. Grp., Inc. v. Ranella Consulting, Inc.*,
    2025 WL 2884988 (N.D. Ga. Sept. 18, 2025).......................................................8

*Doane v. Tele Circuit Network Corp.*,
    2024 WL 3939560 (N.D. Ga. Aug. 26, 2024)......................................................23

*Doe as Next Friend of Doe #6 v. Swearingen*,
    51 F.4th 1295 (11th Cir. 2022) .......................................................................13

*Doe v. Roe*,
    362 Ga. App. 23 (2021) .............................................................................15, 18

*Ferguson v. Innovate Loan Serv. Corp.*,
    2019 WL 4804272 (N.D. Ga. Aug. 7, 2019) .......................................................24

*Goldman v. Goldman*
    2025 WL 3190870 (N.D. Ga. Mar. 31, 2025) ....................................................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)............................................................................................9

*Henriquez v. El Pais Q'Hubocali.com*,
    500 F. App'x 824 (11th Cir. 2012)....................................................................5

*Henry Cnty. Schs. v. Grant*,
    2026 WL 1677896 (Ga. App. June 10, 2026) ..................................................18

*Hickey v. Askren*,
    198 Ga. App. 718 (1991) .................................................................................12

*I.C. v. Zynga, Inc.*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022)...........................................................23

*Jevremovic v. Courville*,
    2024 WL 4024144 (D.N.J. Aug. 30, 2024) ......................................................23

*Jimenez v. U.S. Att'y Gen.*,
    146 F.4th 972 (11th Cir. 2025) ..................................................................12, 13

*Kirkland v. Tamplin*,
    285 Ga. App. 241 (2007) .................................................................................17

*LabMD, Inc. v. Tiversa, Inc.*,
    509 F. App'x 842 (11th Cir. 2013)..................................................................6, 8

*Lambert v. Angel Oak Funding, LLC*,
    2015 WL 13777926 (N.D. Ga. Mar. 5, 2015) ..................................................19

*LifeBrite Labs., LLC v. Blue Cross & Blue Shield of Fla., Inc.*,
    2024 WL 3030657 (N.D. Ga. June 17, 2024).....................................................6

*Loye v. Emory Univ.*,
    2025 WL 1207028 (N.D. Ga. Mar. 5, 2025) ....................................................20

*M.H.D. v. Westminster Schools*,
    172 F.3d 797 (11th Cir. 1999) .........................................................................12

iii

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ................................................................10

*Marion v. Hollis Cobb Assocs., Inc.*,
    2025 WL 1275828 (N.D. Ga. Feb. 14, 2025) ...........................................22

*Miller v. NextGen Healthcare, Inc.*,
    742 F. Supp. 3d 1304 (N.D. Ga. 2024) ....................................................22

*Nairon v. Land*,
    242 Ga. App. 259 (2000) ..........................................................................15

*Ogburn v. Branch Banking & Trust Co.*,
    2012 WL 13008858 (N.D. Ga. May 4, 2012) ...........................................19

*Racette v. Bank of Am., N.A.*,
    318 Ga. App. 171 (Ga. App. 2012) ...........................................................14

*Rivell v. Priv. Health Care Sys.*,
    887 F. Supp. 2d 1277 (S.D. Ga. 2012) .....................................................12

*Shaver Law Grp. LLC v. Concorde Inv., LLC*,
    796 F. Supp. 3d 1349 (N.D. Ga. 2025) ......................................................5

*Sheely v. Bank of Am., N.A.*,
    36 F. Supp. 3d 1364 (N.D. Ga. 2014) ......................................................19

*SkyHop Techs., Inc. v. Narra*,
    58 F.4th 1211 (11th Cir. 2023) ...................................................................9

*Smith v. Burns Intern. Sec. Servs.*,
    2005 WL 1522606 (M.D. Ga. Jun. 28, 2005) ...........................................20

*Smith v. Henry*,
    276 Ga. App. 831 (2005) ..........................................................................15

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) ...................................................................9

*Southland Propane, Inc. v. McWhorter*,
    312 Ga. App. 812 (2011) ..........................................................................19

*The Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier,*
349 Ga. App. 203 (2019) ...................................................................................20

*UPS v. Moore,*
238 Ga. App. 376 (1999) ......................................................................14, 16, 18

*Valencia v. Univ. City Studios, LLC,*
2014 WL 7240526 (N.D. Ga. Dec. 18, 2014) ..............................................12, 13

*Wainberg v. Mellichamp,*
93 F.4th 1221 (11th Cir. 2024) ...................................................................12, 13

*Walden v. Fiore,*
571 U.S. 277 (2014).........................................................................................10

*Walker v. Blue Ridge Reg'l Hosp., LLC,*
2016 WL 9113185 (N.D. Ga. Jan. 19, 2016)..............................................11, 21

*Warthaw v. S.E. Personnel Leasing Inc.,*
2016 WL 11817177 (N.D. Ga. Sept. 19, 2016)..................................................21

*Waters v. Rosenbloom,*
268 Ga. 482, 483 (1997) ...................................................................................13

*Williams v. Fruge,*
2026 WL 915205 (N.D. Ga. Mar. 31, 2026) .......................................................9

*Witter v. Delta Airlines,*
966 F. Supp. 1193 (N.D. Ga. 1997)....................................................................20

*Yarbray v. S. Bell Tel. & Tel. Co.,*
261 Ga. 703 (1991) ...........................................................................................22

**Statutes**

O.C.G.A. § 9-3-33.........................................................................................3, 11

O.C.G.A.§ 9-10-91.........................................................................................5, 7

O.C.G.A. § 9-15-14(b).......................................................................................25

O.C.G.A. § 51-5-7(2)........................................................................................15

Defendant Curtis J. Jackson, III respectfully submits this memorandum of law in support of his motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and Northern District of Georgia Local Rule 7.1(A)(1), Plaintiff Monique Mayers' First Amended Complaint ("FAC") (ECF No. 5-1).[1] Plaintiff's claims are baseless, time-barred, and nothing more than a media stunt, and should accordingly be dismissed in their entirety.

## PRELIMINARY STATEMENT

Plaintiff filed this lawsuit more than seven years after her employment as an assistant to Jackson ended—and her claims are no more viable now than they would have been then. The FAC is a 66-page compendium of inflammatory allegations, legal conclusions, and rank speculation that fails at every level: this Court lacks personal jurisdiction over Jackson, a Texas resident with no meaningful contacts with Georgia; the vast majority of the alleged conduct occurred outside Georgia's two-year statute of limitations; and even the timely allegations fail to state a plausible claim for intentional infliction of emotional distress or intrusion upon seclusion.

At its core, Plaintiff's theory is that because strangers called and texted her phone number looking for Jackson—her former employer of over a decade—Jackson must have orchestrated a deliberate campaign of intimidation against her.

---

[1] Out of an abundance of caution, Jackson responds to the proposed Amended Complaint, filed as Exhibit A to Plaintiff's Response to Order to Show Cause.

1

That is not a plausible inference. It is speculation dressed up as a complaint, padded with irrelevant references designed to prejudice rather than to plead. If Plaintiff really felt she was being harassed, *she could have changed her phone number* and informed her contacts that her number had changed—however, she did not do so. The FAC should accordingly be dismissed with prejudice.

## FACTUAL BACKGROUND

Mayers alleges that she worked for Jackson from October 2007 through March 2019. FAC ¶55. She claims Jackson terminated her employment on March 27, 2019 "without providing a reason." *Id.* ¶80. She then filed this action on April 29, 2026—*more than seven years later*.

Rather than confine the FAC to actionable allegations, Plaintiff devotes much of her 66-page pleading to inflammatory, irrelevant, and prejudicial material. For example, the FAC references: (i) alleged asset concealment and disbursement to avoid bankruptcy reporting obligations; (ii) an alleged request to file a false police report; and (iii) an FBI investigation, a federal grand jury, and a criminal case against non-party Mitchell Green in which Plaintiff alleges that she was merely a subpoenaed witness.[2] *See id.* None of this is relevant to whether Jackson committed

---

[2] Ironically, Mayers alleges "Jackson provided Ms. Mayers' name to the FBI as a former employee and potential background witness in connection with the criminal investigation involving Mitchell Green," thus negating any purported motive by Jackson. FAC ¶26.

the torts of intentional infliction of emotional distress ("IIED") or intrusion upon seclusion against Plaintiff. It is included to prejudice the Court against—as well as to generate sensational headlines and color public opinion about—Jackson.

The vast majority of the conduct alleged is also time-barred. Georgia imposes a two-year statute of limitations for both IIED and intrusion upon seclusion claims. O.C.G.A. § 9-3-33. Plaintiff filed this action on April 29, 2026; thus, only alleged conduct occurring on or after April 29, 2024 falls within the limitations period. Yet the FAC reaches back to 2019 and devotes the bulk of its factual allegations to events from 2019 through early 2024—years outside the limitations window.

Stripped of its scandalous and time-barred material, what remains of the FAC is this: Plaintiff alleges that she received phone calls, voicemails, and text messages from unidentified individuals on various dates. FAC ¶¶91-92. Critically, the FAC's own allegations establish that the people who contacted Plaintiff's phone number believed they were contacting *Jackson*—not Plaintiff. These strangers asked for "Curtis," "50," "Curtis James Jackson the 3rd," and "fif." *Id.* ¶¶23, 91-92. They repeated a variation of his nickname ("Fiddy"); texted their "friend 50" for "tickets to his show"; confirmed a dinner reservation for Jackson; and someone claiming to be "Ja Rule" called "asking for 'Curtis.'" *Id.* ¶91. Others directed a threat to "fif" ("You will suffer fif.") and claimed that "50 Cent owed them 100k." *Id.* ¶¶100, 138. More recently, "[c]allers continued to ask for 'Curtis'" and a "caller stated they were

3

looking for '50' days before the filing of [the] complaint." *Id.* ¶¶133, 141. In other words, these strangers were not calling to harass Plaintiff; they were trying to reach Jackson believing that Plaintiff's number was his—which is not surprising considering she worked for him as his assistant for over a decade. Indeed, the only direct evidence of how any caller obtained Plaintiff's number is the allegation that Jackson gave Victor Sena the number "in passing … to get him tickets to his show" and Sena believed it was Jackson's own number ("I'm your friend 50"). *Id.* ¶91(d).

Plaintiff does not allege that Jackson himself made a single phone call, left a single voicemail, or sent a single text message to Plaintiff. She does not allege that Jackson directed any specific individual to threaten or harass her. Instead, she asks this Court to infer—from the fact that strangers trying to reach Jackson called ***her*** number—that Jackson orchestrated a deliberate campaign of intimidation. That inferential leap is not plausible, and it is not sufficient to state a claim.

## ARGUMENT

### This Court Does Not Have Personal Jurisdiction Over Jackson, a Texas Resident

This action against Jackson should be dismissed because this Court does not have personal jurisdiction over him—either general or specific.[3]

Pursuant to Rule 12(b)(2), "'[a] plaintiff seeking the exercise of personal

---

[3] Plaintiff only alleges specific, not general, jurisdiction. Indeed, Jackson is "a resident" and "citizen of the state of Texas." FAC ¶50.

4

jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Shaver Law Grp. LLC v. Concorde Inv., LLC*, 796 F. Supp. 3d 1349, 1353 (N.D. Ga. 2025) (citation omitted). In determining whether jurisdiction has been established over a non-resident defendant, this Court must inquire: (1) whether the plaintiff has alleged sufficient facts to subject the defendant to Georgia's long-arm statute, O.C.G.A. § 9-10-91; and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See id.* at 1353-54; *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 827-28 (11th Cir. 2012). Georgia's long-arm statute "'imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process.'" *Shaver*, 796 F. Supp. 3d at 1354 (citation omitted).

### a. Jackson is not subject to personal jurisdiction under Georgia's long-arm statute.

Although unclear, Plaintiff appears to argue that this Court has jurisdiction over Jackson under either subsection (2) or (3) of Georgia's long-arm statute. *See* FAC ¶52; O.C.G.A. § 9-10-91(2), (3).[4] Either way, Plaintiff does not and cannot

---

[4] Nowhere does Plaintiff argue that Jackson "[t]ransacts any business within [Georgia]" under O.C.G.A. § 9-10-91(1). *See Henriquez*, 500 F. App'x at 828 (a plaintiff must show that, among other things, "'the cause of action arises from or is connected with such act or transaction'" (citation omitted)). Moreover, based on the pleadings, O.C.G.A. §§ 9-10-91(4), (5), and (6) clearly do not apply.

5

satisfy the requirements of the long-arm statute.

*First*, Plaintiff does not allege any facts for this Court to reasonably infer that Jackson "[c]ommit[ted] a tortious act or omission within [Georgia]," which is required for jurisdiction under O.C.G.A. § 9-10-91(2). Plaintiff does not contend that Jackson took any of the allegedly tortious actions in Georgia or that the alleged actions otherwise constitute a tortious act or omission within Georgia. *See LifeBrite Labs., LLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2024 WL 3030657, at *4 (N.D. Ga. June 17, 2024) ("'[T]he clear language of subsection (2) requires that the nonresident defendant commit a tortious act *in the State of Georgia*.'" (citation omitted)). Plaintiff merely claims that Jackson, ***who is not alleged to have been in Georgia***, disclosed her phone number and caused others to send calls, voicemails, and text messages to her—she does not even allege that Jackson made the underlying calls, voicemails, or text messages. *See* FAC ¶¶ 52, 91-92. This purported conduct by Jackson does not constitute tortious acts within Georgia.

Assuming, *arguendo*, Jackson himself made the calls, voicemails, or text messages—***from outside of Georgia***—that too is not sufficient to allege that he committed a tortious act within Georgia. "Georgia courts have ruled that—when a defendant uses the telephone or email to contact a Georgia resident—defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email." *LabMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir.

6

2013) (affirming dismissal for lack of personal jurisdiction because the phone call and emails to a Georgia resident were from another state); *Anderson v. Deas*, 279 Ga. App. 892, 892-93 (2005) (affirming dismissal for lack of personal jurisdiction because the "daily" phone calls, and alleged threatening calls, to a Georgia resident were from another state). Plaintiff simply does not allege any tortious acts by Jackson within Georgia and thus subsection (2) does not apply.[5]

*Second*, Plaintiff does not allege any facts for this Court to reasonably infer that Jackson "[c]ommit[ted] a tortious injury in [Georgia] caused by an act or omission outside [Georgia]" *and* "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]." O.C.G.A. § 9-10-91(3) (the requirements are conjunctive). The conclusory allegation that Jackson's allegedly tortious actions "caused harm in Georgia" (FAC ¶52) is clearly insufficient.

Even if Plaintiff had pleaded that Jackson committed a tortious injury in this state, subsection (3) requires much more. *See Anderson*, 279 Ga. App. at 892 ("although [defendant] may have committed a tortious injury in this state, Georgia courts clearly do not have jurisdiction over him under paragraph (3) of the long arm statute, because he has not met any of the other requirements … set forth in

---

[5] Plaintiff's allegations of multiple such communications do not alter the jurisdictional calculus; if one call from outside Georgia does not constitute a tortious act within the state, neither do multiple calls from outside Georgia.

paragraph 3."). Georgia courts consider many factors, including "whether a defendant (1) regularly does business or solicits business within Georgia; (2) engages in a persistent course of conduct within Georgia; (3) derives substantial revenue from services rendered within Georgia; (4) has employees located within Georgia; or (5) is authorized to do business in Georgia." *LabMD*, 509 F. App'x at 845; *Data Tech. Grp., Inc. v. Ranella Consulting, Inc.*, 2025 WL 2884988, *6 (N.D. Ga. Sept. 18, 2025) ("Absent sufficient allegations that more than one of the relevant factors are satisfied, the Court cannot conclude that [defendant] is subject to personal jurisdiction under subsection (3) of Georgia's long-arm statute."). However, Plaintiff alleges no facts whatsoever that would establish even one of these factors, let alone more. This Court should thus find that subsection (3) does not apply.

Plaintiff has not carried the pleading burden necessary to withstand a motion to dismiss for lack of personal jurisdiction under any subsection of the long-arm statute. The FAC should be dismissed for that reason alone.

### b. Due process considerations do not allow the exercise of personal jurisdiction over Jackson.

Even if Plaintiff had satisfied the requirements of Georgia's long-arm statute, the exercise of personal jurisdiction over Jackson would still be improper because Plaintiff alleges no facts to meet the constitutional due process requirements. "Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident … defendant that has certain minimum contacts with [the forum] such

8

that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citations and quotation marks omitted). To satisfy the threshold "minimum contacts" requirement, the plaintiff must demonstrate that: "(1) the plaintiff's claims 'arise out of or relate to' the defendant's contacts with the forum, [and] (2) the defendant 'purposefully availed' himself of the forum." *Williams v. Fruge*, 2026 WL 915205, at *7 (N.D. Ga. Mar. 31, 2026) (citing *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023)). Here, Plaintiff has not demonstrated that Jackson has sufficient, meaningful contacts with Georgia.

As a threshold matter, Plaintiff's conclusory allegation, unsupported by any facts, that "Defendant has sufficient minimum contacts with the State of Georgia and has purposefully availed himself of the privilege of conducting activities within Georgia" (FAC ¶ 52) is grossly insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("[V]ague and conclusory allegations presented in [a] complaint … are insufficient to establish a prima facie case of personal jurisdiction over [defendant]." (footnote omitted)).

Moreover, Plaintiff cannot rely on her claim that Jackson, who is not alleged to have been in Georgia, disclosed her phone number and caused others to send calls,

voicemails, and text messages to Plaintiff, who Jackson allegedly knew was a Georgia resident. FAC ¶52. These allegations do not survive due process scrutiny. Indeed, the FAC is devoid of any facts whereby Jackson "'should reasonably anticipate being haled into court'" in Georgia based on his purported "'conduct and connection with the forum State.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted).

The due process inquiry focuses on "***the relationship among the defendant, the forum, and the litigation***," not "a defendant's relationship with a plaintiff." *Walden v. Fiore*, 571 U.S. 277, 283-84, 286 (2014) (emphasis added) (citations and quotation marks omitted). Indeed, "mere injury to a forum resident is not a sufficient connection to the forum. … The proper question is … whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Here, Plaintiff is "the only link" between Jackson and Georgia—thus, Jackson's alleged knowledge of Plaintiff's Georgia residence does not establish that his conduct was directed at Georgia as a forum. *See id.* at 285; *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990).[6]

The Court should find that Plaintiff has not satisfied her burden of showing that the exercise of specific personal jurisdiction over Jackson would comport with

---

[6] Nevertheless, the exercise of jurisdiction would not comport with fair play or substantial justice—it would be unduly burdensome to hale a Texas resident into Georgia court, especially when the only alleged connection to Georgia is Plaintiff.

due process and accordingly dismiss the FAC.

### Plaintiff Fails to State a Claim for Relief Against Jackson

Pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court need not "'accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Assuming the veracity of well-pled factual allegations, the Court must then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This determination is context-specific, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

The FAC should be dismissed with prejudice because Plaintiff does not sufficiently state a cause of action and no amendment can cure the deficiencies.

### a.    The claims are time-barred in part (before April 29, 2024) under Georgia's two-year statute of limitations.

In Georgia, the statute of limitations for IIED and intrusion upon seclusion claims is two years and begins to run from the time the alleged unlawful act is committed. O.C.G.A. § 9-3-33; *Walker v. Blue Ridge Reg'l Hosp., LLC*, 2016 WL 9113185, at *5 (N.D. Ga. Jan. 19, 2016). To the extent Plaintiff's claims are premised on alleged conduct that occurred *before April 29, 2024* (two years before the claims

11

were filed), they should be dismissed.

Plaintiff concedes that the alleged conduct at issue began in *2019* but tries to hijack the continuing violation doctrine to sweep in acts dating back seven years. However, the doctrine does not apply here. The Eleventh Circuit applies the doctrine "only in limited circumstances." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1227 (11th Cir. 2024). Indeed, ***invasion of privacy by intrusion upon seclusion* "*do[es] not [even] belong in the narrow category of torts to which courts apply the continuing tort doctrine*." *Valencia v. Univ. City Studios, LLC*, 2014 WL 7240526, at \*4 (N.D. Ga. Dec. 18, 2014) (emphasis added).[7]

"'A continuing tort is one inflicted over a period of time.'" *Hickey v. Askren*, 198 Ga. App. 718, 720 (1991) (citation omitted). The doctrine is applied only "where the plaintiff's injury developed from prolonged exposure to the defendant's tortious conduct," such as long-term exposure to toxic chemicals and fumes. *M.H.D. v. Westminster Schools*, 172 F.3d 797, 804-05 (11th Cir. 1999) (citation omitted). "When 'a defendant takes separate and discrete acts that repeatedly violate the law, the continuing violation doctrine does not apply.'" *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 992 (11th Cir. 2025) (citation omitted). Critically, "[t]he continuing violation doctrine cannot convert 'related discrete acts into a single unlawful practice

---

[7] *See also Rivell v. Priv. Health Care Sys.*, 887 F. Supp. 2d 1277, 1286 (S.D. Ga. 2012) (collecting cases).

for the purposes of timely filing.'" *Id.* (citation omitted); *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1306 (11th Cir. 2022) ("Repeated similar violations are not the same as a single violation of an ongoing nature."). Instead, "'each new violation' starts the clock on its own limitations period." *Wainberg*, 93 F.4th at 1227 (citation omitted).

As noted, the doctrine cannot apply to the intrusion upon seclusion claim as a matter of law. But the doctrine is equally fatal for the IIED claim here. Each discrete tortious act that Plaintiff alleges, *even if related to the next*, accrues independently— these are not continuing torts. And even if the doctrine were to apply, the claims would still be barred in part by the discovery rule because Plaintiff was aware of the alleged unlawful acts as they occurred and "[t]he physical [harm] onset began on March 18, 2019." FAC ¶155; *see Waters v. Rosenbloom*, 268 Ga. 482, 483 (1997) ("Georgia courts have consistently held that in a continuing tort a cause of action accrues when a plaintiff discovers … both the injury and the cause thereof.").[8]

Alleged conduct occurring before April 29, 2024 is accordingly time-barred and claims based on such conduct should be dismissed. This eliminates a number of factual allegations upon which the claims are premised, including: (i) Jackson listening on mute during calls (early 2019), FAC ¶153; (ii) the investigator's

---

[8] *Valencia*, 2014 WL 7240526, at *4 ("Even if the initial tortious act continues to cause subsequent damage, if the act is a completed wrong, then the statute of limitations begins to run at the time of the act.").

statement (early 2019), *id*. ¶76; (iii) the security guard's visit (early 2019), *id*. ¶81; (iv) counsel's notice letter to Forbes (June 2019), *id.* ¶82; (v) Jackson disclosing Plaintiff's number to another (September 2023), *id.* ¶24; and (vi) the calls, voicemails, and text messages from strangers before April 29, 2024, *id.* ¶91(a)-(h). Nevertheless, the remaining "timely" allegations do not satisfy either claim.

### b.    Count I for IIED should be dismissed with prejudice.

Plaintiff's claim for IIED is insufficiently pleaded and should be dismissed. Under Georgia law, "'a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; *and* (4) the emotional distress was severe.'" *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 179 (Ga. App. 2012) (citation omitted) (emphasis added). "[T]he burden which the plaintiff must meet in order to prevail in this cause of action is a ***stringent*** one." *Id.* (emphasis added). Here, Plaintiff fails to meet her stringent burden and allege that Jackson's conduct was extreme and outrageous *or* that it caused Plaintiff severe emotional distress.

*Jackson's alleged conduct was not extreme and outrageous.*

To satisfy the extreme and outrageous requirement, the conduct "must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." *UPS v. Moore*, 238 Ga. App. 376, 377 (1999). Such conduct "does not include mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." *Id.* It is also "'not … enough that

14

the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Doe v. Roe*, 362 Ga. App. 23, 30 (2021) (citation omitted). Here, Plaintiff does not allege extreme and outrageous conduct.

*First*, the allegation that Jackson directed his attorney to question Plaintiff—*at her deposition*—as to "whether she knew who murdered Israel Ramirez" (FAC ¶153) does not qualify. Georgia law provides that litigation conduct, even if abusive, frivolous, or malicious, does not constitute extreme and outrageous conduct. *Alexander v. A. Atlanta Autosave, Inc.*, 272 Ga. App. 73, 77, 77 n.12 (2005) ("'the filing of a lawsuit,'" even if frivolous, "'is [not] sufficient to establish humiliating, embarrassing, or frightening conduct which will give rise to a claim of intentional infliction of emotional distress.'" (citation omitted)); *Nairon v. Land*, 242 Ga. App. 259, 261 (2000) ("a plaintiff is precluded from filing a claim of either intentional or negligent infliction of emotional distress as a remedy for abusive litigation.").

Moreover, such attorney conduct cannot be the basis for an IIED claim because it is privileged. O.C.G.A. § 51-5-7(2) ("The following communications are deemed privileged … [s]tatements made in good faith in the performance of a legal or moral private duty"); *Smith v. Henry*, 276 Ga. App. 831, 834 (2005). Although the claim is against Jackson, and not his counsel, privilege attaches to the

15

communication itself—permitting IIED claims based on deposition questions would eviscerate privilege and chill vigorous advocacy.

*Second*, the allegation that Jackson disclosed Plaintiff's telephone number to others (FAC ¶¶153-54) does not constitute extreme and outrageous conduct. The only relevant factual allegations are: "[o]n *September 1, 2023*, … Victor Sena texted Ms. Mayers confirming that '50 gave him' Ms. Mayers' number 'in passing in San Diego at the Parq' to get him tickets to his show" and Sena thought it was Jackson's number ("I'm your friend *50*"). *Id.* ¶91(d) (emphases added). That does not "go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." *UPS*, 238 Ga. App. at 377.

The allegation that Jackson caused others to send calls, voicemails, and text messages to Plaintiff, including a "you will suffer fif" text message and voicemails with the song lyrics "bang bang, I shot you down" (FAC ¶¶153-54), also does not constitute extreme and outrageous conduct. These communications were not from, and cannot be attributed to, Jackson. *Id.* ¶¶23 ("strangers called and texted"), 91-92 ("from unknown numbers, strangers"). The FAC relies heavily on circumstantial evidence rather than directly connecting Jackson to each specific call; indeed, the Sena allegation only provides one instance of number-sharing, not an orchestrated campaign. Moreover, the FAC does not allege that Jackson directed the specific content of the communications; if anything, strangers were under the impression that

16

they were contacting ***Jackson***, not Plaintiff. FAC ¶¶23 ("asking for 'Curtis,' '50,' 'Curtis James Jackson the 3rd,' and 'fif.'"), 91-92 ("asking for 'Curtis' or '50'").

Even if such conduct was attributable to Jackson, frequent communications, as well as messages stating that ***Jackson*** would suffer[9] and playing the well-known song *Bang Bang (My Baby Shot Me Down)*, do not suffice. Mere threats are not sufficient—indeed, courts have disregarded far more egregious conduct. In *Goldman v. Goldman*, the court dismissed an IIED claim because allegations that defendants "orchestrate[d] a robocall attack in which [p]laintiff received hundreds of automated calls" were insufficient because "[p]laintiff does not point to any abusive or threatening statements from any of the defendants that were 'so terrifying or insulting as naturally to humiliate, embarrass or frighten' [p]laintiff." 2025 WL 3190870, at *4 (N.D. Ga. Mar. 31, 2025) (citation omitted). A separate text message: "'Mama just died a few minutes ago,'" along with a picture of plaintiff's deceased mother, was also not sufficient. *Id.* In *Moses v. Prudential Insurance Company of America*, the voicemail: "'you are going to find your butt in court or your neck broken somewhere'" was not extreme and outrageous. 187 Ga. App. 222, 223, 225 (1988); *see also Kirkland v. Tamplin*, 285 Ga. App. 241, 245-46 (2007) (stating in a "'murderous tone' that '[w]hat goes around comes around' and that '[t]his will all

---

[9] The "you" in "you will suffer ***fif***" (emphasis added) refers to Jackson a/k/a "Fif," not Plaintiff. FAC ¶28. Even if it referred to Plaintiff, the allegation is unavailing.

come back to you one day'" not extreme and outrageous).

*Third*, the remaining allegations from **2019** do not constitute extreme and outrageous conduct: (a) "Jackson personally listened on mute during multiple calls through his attorney" (FAC ¶153); (b) Jackson's investigator told Plaintiff that "if we want your families phone numbers, we can get them," a simple statement of fact (*id.* ¶¶76, 154); (c) Jackson's security guard came to Plaintiff's home and told her that "Jackson 'cared about' [her] and wanted to meet with her" (*id.* ¶¶81, 153); and (d) Jackson's counsel sent a notice letter—a privileged communication—to Forbes regarding an article about Plaintiff and Forbes chose to remove the article (*id.* ¶¶82, 154). *See UPS*, 238 Ga. App. at 377; *Doe*, 362 Ga. App. at 30.

The aggregation of the foregoing non-extreme and outrageous conduct— particularly when excluding that which is time-barred (before April 29, 2024)—does not transform it into actionable conduct. *See, e.g.*, *Henry Cnty. Schs. v. Grant*, 2026 WL 1677896, at *7 (Ga. App. June 10, 2026) ("viewing the alleged actions cumulatively, they do not rise to the requisite level of extreme or outrageous conduct to state a claim for IIED as a matter of law," even though they are "unpleasant and demeaning"). The IIED claim should accordingly be dismissed for failure to satisfy the extreme and outrageous standard. The Court can stop its analysis here.

### *Jackson's alleged conduct did not cause Plaintiff severe emotional distress.*

To state a plausible IIED claim, "a plaintiff must also plead facts showing that

the emotional distress … she experienced was severe." *Ogburn v. Branch Banking & Trust Co.*, 2012 WL 13008858, at *10 (N.D. Ga. May 4, 2012), *report and recommendation adopted*, 2012 WL 13012960 (N.D. Ga. June 15, 2012). "The law intervenes only where the distress inflicted is so severe that no reasonable (person) could be expected to endure it.'" *Sheely v. Bank of Am., N.A.*, 36 F. Supp. 3d 1364, 1379 (N.D. Ga. 2014) (citing *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 819 (2011)). Here, Plaintiff alleges no facts that meet that "severe" standard.

*First*, the allegations that Plaintiff suffered "elevated blood pressure requiring urgent care and specialist referral"—starting in **March 2019** from workplace stress—and "has been diagnosed with adjustment disorder with anxiety" (FAC ¶¶77, 156) do not suffice. In *Sheely*, the court granted a motion to dismiss an IIED claim where one plaintiff "'suffer[ed] with severe stress and high blood pressure that threatens his job'" and the other "has blood pressure that is so high even the most potent medicine cannot control it." 36 F. Supp. 3d at 1379. "[T]here is no reason to believe that their distress was so severe that no reasonable person could be expected to endure it. On the contrary, millions of reasonable Americans have been expected to deal with stress and anxiety of precisely this sort. The [plaintiffs] are not alone in their suffering." *Id.* at 1380; *Lambert v. Angel Oak Funding, LLC*, 2015 WL 13777926, *8 (N.D. Ga. Mar. 5, 2015) ("the allegation that plaintiff's doctor attributed her high blood pressure to the work environment … is insufficient"),

19

*report and recommendation adopted*, 2015 WL 13778561 (N.D. Ga. May 4, 2015).[10]

*Second*, the allegation that Plaintiff lives in "fear for herself and her family" (FAC ¶156) does not constitute severe emotional distress. *Sheely*, 36 F. Supp. 3d at 1379 ("'fright'" and "'horror'" are mere emotional distress; "'[i]t is only where it is *extreme* that liability arises.'" (citation omitted)); *The Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*, 349 Ga. App. 203, 212 (2019) (testimony that plaintiff "fears for her safety and that of her children, and she is afraid to let her children play in their back yard" not sufficient, even though "certainly unpleasant").

*Third*, the allegation that Plaintiff has been unable "to secure employment commensurate with her nearly twelve years of experience" (FAC ¶156) is unavailing. Critically, Plaintiff does not allege that she has not been able to secure *any* employment; rather, she complains about the quality of the employment options available to her—that does not constitute severe emotional distress. *See Smith v. Burns Intern. Sec. Servs.*, 2005 WL 1522606, at *6 (M.D. Ga. Jun. 28, 2005) ("'Being denied a desired position is indeed a blow ... and the emotional slight is

---

[10] *See also Loye v. Emory Univ.*, 2025 WL 1207028, at *8, 13 (N.D. Ga. Mar. 5, 2025) (recommending dismissal of IIED claim even though plaintiff "could not sleep, was very sick, had anxiety, and was depressed" and "was prescribed an anti-depressant, anti-anxiety medication, and sleeping pills"), *report and recommendation adopted*, 2025 WL 1207019 (N.D. Ga. Mar. 24, 2025); *Witter v. Delta Airlines*, 966 F. Supp. 1193, 1201 (N.D. Ga. 1997) (dismissing IIED claim based on "anxiety, sleeplessness, overeating, diarrhea and headaches," even though "these symptoms are not minor").

surely magnified if suspected of growing from illicit motives. Even so, such emotional duress falls within that class of life's vagaries for which the law gives no comfort …."'" (citation omitted)).[11]

*Fourth*, the bare assertions that Plaintiff suffered "mental anguish, humiliation, emotional distress, loss of enjoyment of life, … and other non-pecuniary losses" (FAC ¶156) are not sufficient. *Warthaw v. S.E. Personnel Leasing Inc.*, 2016 WL 11817177, at *8 (N.D. Ga. Sept. 19, 2016) (allegations of "humiliation, embarrassment, and fear on the part of [p]laintiff," as well as "damage to the happiness, well-being, and peace of mind of [p]laintiff and his family," "'are more conclusory than factual'" and do not support "extreme or severe emotional distress"); *Brooks v. Branch Banking & Trust Co.*, 107 F. Supp. 3d 1290, 1302 (N.D. Ga. 2015) ("conclusory allegations that [plaintiff] was naturally humiliated and embarrassed, that she was emotionally upset, and that she was damaged are insufficient to demonstrate the requisite severity").

The IIED claim should therefore be dismissed for failure to satisfy the severe emotional distress standard as well.

---

[11] *Cf. Walker¸* 2016 WL 9113185, at *6 ("Georgia courts have long held that an employer's termination of an employee 'however stressful to the employee—generally is not extreme and outrageous conduct.'" (citation omitted)).

21

### c. Count II for invasion of privacy by intrusion upon seclusion should be dismissed with prejudice.

"'The tort of intrusion involves *an unreasonable and highly offensive intrusion* upon another's seclusion.'" *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1315 (N.D. Ga. 2024) (emphasis added) (citing *Summers v. Bailey*, 55 F.3d 1564, 1566 (11th Cir. 1995)). "[I]n Georgia, a claim based on the intrusion upon seclusion theory requires a plaintiff to demonstrate that they were 'subjected to *physical intrusion analogous to a trespass*.'" *Marion v. Hollis Cobb Assocs., Inc.*, 2025 WL 1275828, at *4 (N.D. Ga. Feb. 14, 2025) (emphasis added) (citation omitted), *report and recommendation adopted*, 2025 WL 1606912 (N.D. Ga. Apr. 21, 2025); *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 137 (2011) ("any conduct that is akin to surveillance, a physical trespass upon his property, or a physical touching of his person"). The "unreasonable intrusion" aspect "'involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns.'" *Id.* (citing *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 705 (1991)). Plaintiff's allegations—that Jackson disclosed her phone number and caused others to send calls, voicemails, and text messages to her—are not intrusions upon seclusion as the law defines it. Critically, Plaintiff does not allege *physical* trespass or surveillance—that is fatal to her claim.

*First*, the purported disclosure of a phone number—here, to Victor Sena on *September 1, 2023* (FAC ¶¶91(d), 164)—does not constitute an intrusion upon

22

seclusion.[12] It is neither a physical trespass nor surveillance. Even if the tort included an intrusion into a person's private affairs or concerns, a phone number—although personal—is not "private." Indeed, Plaintiff does not claim that her phone number is private, let alone that Jackson obtained or disclosed her number through impermissible means. In *Doane v. Tele Circuit Network Corp.*, the court dismissed in part an intrusion upon seclusion claim because "disclosure of a name and cellphone number are not facts of a highly personal or intimate nature." 2024 WL 3939560, at *4 (N.D. Ga. Aug. 26, 2024); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("the Court is hard pressed to conclude that basic contact information, including one's … phone number, … is private information," because "[a]ll of this information is designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation").[13]

*Second*, the allegation that Jackson caused nameless others to send calls, voicemails, and text messages to Mayers (FAC ¶¶164-65) does not constitute a

---

[12] Plaintiff's allegation, without any supporting facts, that Jackson disclosed her number "to random strangers … with instructions or inducements to call and text Plaintiff at all hours of the night and morning" (FAC ¶164) is conclusory and speculative. The only factual allegation is that Jackson gave her number to Sena for tickets to Jackson's show and Sena thought it was Jackson's number.

[13] *Jevremovic v. Courville*, 2024 WL 4024144, at *7 (D.N.J. Aug. 30, 2024) (dismissing intrusion upon seclusion claim where defendant allegedly released plaintiff's home addresses, phone number, and social security number because the "conclusory" labeling of such information "as 'private' does not explain how [plaintiff] has an expectation of privacy").

23

tortious intrusion by Jackson either. Again, Plaintiff alleges no facts linking Jackson to those communications. Speculative and unsupported assertions are no substitute for well-pleaded facts showing he authorized, controlled, or directed the communications. Indeed, the FAC demonstrates that the "strangers" who contacted Mayers believed that they were contacting *Jackson*, not Plaintiff. *Id.* ¶¶23, 91-92.

Nevertheless, repeated phone calls and text messages are insufficient to support an intrusion upon seclusion claim. "A showing of repeated phone calls to an individual's telephone number, *even if purely motivated by the desire to harass, bother, and annoy the individual without any actual business purpose*, is not sufficient to be an actionable invasion of privacy." *Ferguson v. Innovate Loan Serv. Corp.*, 2019 WL 4804272, at *2 (N.D. Ga. Aug. 7, 2019) (emphasis added). In *Jones v. Mortgage Electronic Registration Systems*, the court granted a motion to dismiss an intrusion upon seclusion claim based on allegations that defendant placed "515 calls [to plaintiffs] in a five-month period, 'all in an effort to annoy, harass, intimidate and scare'" them, finding plaintiffs did "'not allege any conduct that is akin to surveillance, a physical trespass upon [their] property, or a physical touching of [their] person.'" 2012 WL 13028548, at *5 (N.D. Ga. Apr. 17, 2012) (citation omitted); *Benedict*, 309 Ga. App. at 137 (affirming dismissal of intrusion upon seclusion claim based on allegations that defendant called plaintiff 168 times over a three-week period "to harass, bother, and annoy him"). Even if such communications

24

constitute an annoyance or disturbance of the peace, they are not an actionable intrusion into Plaintiff's affairs.[14]

Accordingly, the FAC should be dismissed with prejudice.[15]

### Jackson Should Be Awarded His Attorneys' Fees and Expenses

Jackson should be awarded his reasonable attorneys' fees and expenses for defending against the FAC because the claims "lack[] substantial justification." O.C.G.A. § 9-15-14(b). As set forth above, Plaintiff's allegations are "substantially frivolous," "groundless," and "vexatious," and Jackson should accordingly be awarded his reasonable attorneys' fees and expenses. *Id.* Ironically, Plaintiff herself seeks attorneys' fees and expenses, yet it is Plaintiff—not Jackson—who has initiated this action without substantial justification.

### CONCLUSION

Defendant Curtis James Jackson, III respectfully requests that this Court grant his motion to dismiss, dismiss the FAC, and award him his reasonable attorneys' fees and expenses incurred in defending this baseless lawsuit.

---

[14] Even if there was an intrusion, it is not an "unreasonable and highly offensive intrusion." A number of the alleged incidents concern brief, polite, and/or confused calls and texts from strangers who believed they were contacting Jackson—a reasonable person would not find such communications to be "highly offensive."

[15] Leave to amend should be denied as futile: despite a 66-page pleading, Plaintiff has failed to state a plausible claim for IIED or intrusion upon seclusion, and any amended complaint would remain barred by Georgia law.

Respectfully submitted this 10th day of July, 2026.

> */s/ Deborah Shelles Cameron*
> Deborah Shelles Cameron
> Georgia Bar No. 105369
> **Mozley, Finlayson & Loggins LLP**
> 1050 Crown Pointe Parkway, Suite 1500
> Atlanta, Georgia 30338
> Tel.: 404-256-0700
> Fax: 404-250-9355
> dcameron@mfllaw.com
>
> Craig Weiner *(pro hac vice* to be filed)
> New York Bar No. 2468239
> Reena Jain *(pro hac vice* to be filed)
> New York Bar No. 5218862
> Alexander Newman *(pro hac vice* to be filed)
> New York Bar No. 5477914
> **Blank Rome LLP**
> 1271 Avenue of the Americas
> New York, New York 10020
> Tel.: 212-885-5000
> Fax: 212-885-5001
> craig.weiner@blankrome.com
> reena.jain@blankrome.com
> alexander.newman@blankrome.com
>
> *Attorneys for Defendant Curtis J. Jackson, III*

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MONIQUE MAYERS,

                Plaintiff,

    v.

CURTIS JAMES JACKSON III, a/k/a
"CURTIS JACKSON" a/k/a "50 CENT,"
a/k/a "FIF," a/k/a "FIFTY,"

                Defendant.

Civil Action No. 1:26-cv-02437-VMC

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed *Memorandum of Law in Support of Defendant's Motion to Dismiss the First Amended Complaint* with the Clerk of Court using the CM/ECF system which will automatically send notice to counsel of record:

Jeremy Stephens, Esq.        jstephens@forthepeople.com

Pursuant to Local Rule 5.1(C), N.D. Ga., I certify that the foregoing pleading is prepared in Times New Roman, 14 point, and that this memorandum is no more than 25 pages, which complies with the page limit set by Local Rule 7.1(D).

This 10th day of July, 2026.

                    */s/ Deborah Shelles Cameron*
                    Deborah Shelles Cameron
                    Georgia Bar No. 105369

27