IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MONIQUE MAYERS,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS JAMES JACKSON III, a/k/a "CURTIS JACKSON" a/k/a "50 CENT," a/k/a "FIF," a/k/a "FIFTY,"<br><br>Defendant. | Civil Action No.<br>1:26-cv-02437-VMC |

## ORDER

Before the Court is Defendant Curtis Jackson's Motion to Dismiss the First Amended Complaint. (Doc. 16). For the reasons that follow, the Court will grant the Motion.

## Background[1]

Plaintiff Monique Mayers worked for Curtis Jackson from October 2007 through March 2019. (Doc. 5-1 ¶ 11). She is a citizen of the State of Georgia. (*Id.* ¶ 49). Mr. Jackson is, upon information and belief, a citizen of the State of Texas. (*Id.* ¶ 50). He is a rapper, actor, producer, and businessman known professionally as

[1] Because this case is before the Court on a Motion to Dismiss, the following facts are drawn from Plaintiff's Proposed First Amended Complaint, and are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546 (1964). Plaintiff was entitled to amend her complaint as a matter of course; therefore, the Court will direct the Clerk to docket the Proposed First Amended Complaint as the First Amended Complaint.

"50 Cent." (*Id.*). He owns and operates G-Unit Records, G-Unit Touring, and G-Unit Film & Television, and holds ownership interests in Sire Spirits, LLC. (*Id.*).

Mr. Jackson terminated Ms. Mayers's employment on March 27, 2019. (*Id.* ¶ 18). Ms. Mayers documented more than eighty-three incidents of harassment between January 2020 and March 2026. (*Id.* ¶¶ 22, 88). These incidents involved at least twenty-five unique phone numbers from California, Texas, Georgia, New York, and, on one occasion, Tanzania. (*Id.*). Callers asked for "Curtis," "50," "Curtis James Jackson the 3rd," and "fif." (*Id.* ¶ 23). A caller contacted her again on April 28, 2026, just days before this action was filed, asking for "50." (*Id.* ¶ 43).

On September 1, 2023, a third party, Victor Sena, texted Ms. Mayers, confirming that "50 gave him" her number "in passing in San Diego at the Parq." (*Id.* ¶¶ 24, 91(d)). In a separate incident, two men told Ms. Mayers that "50 Cent owed them 100k . . . for some girls" and that "[Fifty] had called [them] from [her] number a year ago." (*Id.* ¶ 25).

In the First Amended Complaint's jurisdictional allegations, Ms. Mayers ties Mr. Jackson's conduct to her Georgia phone number and her Georgia residence. (*Id.* ¶ 52). She alleges that he caused threatening texts to be sent to her Georgia number, orchestrated calls to her Georgia residence, and personally distributed her number at public events to people who then called her in Georgia. (*Id.*).

Ms. Mayers alleges that Mr. Jackson terminated her after she refused his directions to "place property in her own name" and to "file a police report falsely claiming" that his driver had stolen his vehicle. (*Id.* ¶¶ 12–18). She alleges that he then waged a "years-long intimidation campaign" against her, including by giving her phone number to people trying to reach him. (*Id.* ¶¶ 5, 22–25). She brings two claims under Georgia law: intentional infliction of emotional distress and invasion of privacy by intrusion upon seclusion. (*Id.* ¶¶ 152–171). She seeks compensatory and punitive damages and a permanent injunction. (*Id.* at 61–66).

Mr. Jackson moved to dismiss the First Amended Complaint under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. (Docs. 16, 16-1). Ms. Mayers responded to the Motion (Doc. 21), and Mr. Jackson replied. (Doc. 22). Thus, this matter is ripe for review. The Court will begin and end with the first argument Mr. Jackson makes in support of dismissal: lack of personal jurisdiction.

**Legal Standard**

A plaintiff's complaint is subject to dismissal if there is a lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th

Cir. 1988). A plaintiff may establish a prima facie case by presenting sufficient evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Allegiant Physicians Serv., Inc. v. Sturdy Mem'l Hosp.*, 926 F. Supp. 1106, 1112 (N.D. Ga. 1996). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1554 (11th Cir. 1995); *see also Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (noting that, if the defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."). The Court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence. *Morris*, 843 F.2d at 492; *Allegiant Physicians*, 926 F. Supp. at 1112; *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).

**Discussion**

In his Motion, Mr. Jackson first argues that the Court lacks personal jurisdiction over him. "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of

jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* (quoting *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998)).

**A. Georgia's Long Arm Statute**

Georgia's long-arm statute provides six bases for exercising personal jurisdiction over a nonresident, but only the first three are at issue here. *See* O.C.G.A. § 9-10-91. The relevant part provides:

> A court of this state may exercise personal jurisdiction over any non-resident . . . as to a cause of action arising from any acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

> revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91. The Eleventh Circuit has instructed that courts in this circuit "must apply the specific limitations and requirements of O.C.G.A. § 9–10–91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1263.[2]

**1. Transacts Any Business**

Under subsection (1), a Georgia court may exercise personal jurisdiction over a nonresident who "transacts any business within this state." O.C.G.A. § 9-10-91(1). This provision confers jurisdiction if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional

[2] Ms. Mayers cites *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352 (Ga. 2005), to define the reach of the long-arm statute. (Doc. 21 at 12). But as one court has recognized, the Eleventh Circuit and "state courts do not appear to read *Innovative Clinical* the same way." *Power Guardian, LLC v. Directional Energy Corp.*, 904 F. Supp. 2d 1313, 1319 n.4 (M.D. Ga. 2012) (acknowledging "the apparent tension between *Diamond Crystal* and Georgia courts' interpretation of the Georgia long-arm statute").

Citations to Docs. 5-1, 16-1, 21, and 22 and their exhibits are to the page numbers in the ECF header, not the internal page numbers of the filings.

fairness and substantial justice." *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 828 (11th Cir. 2012) (quoting *Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)).

Ms. Mayers argues that Mr. Jackson himself transacted business in Georgia. She points out that he signed the 2017 application for a certificate of authority to do business in the state filed by G-Unit Film & Television, Inc. ("G-Unit"). He listed his title as "Officer." She adds that he has been G-Unit's only chief executive officer, chief financial officer, and secretary since then. (Doc. 21 at 12; Doc. 21-3 at 3). She also argues that Georgia has abolished the fiduciary-shield doctrine, so this corporate act counts as Mr. Jackson's own contact with Georgia for jurisdictional purposes. (Doc. 21 at 10–11).

The Court assumes without deciding that Mr. Jackson's signature on the 2017 application was an act of transacting business in Georgia. It is the only act in the record that he took himself. However, jurisdiction over an officer does not automatically follow from jurisdiction over the corporation. *See Amerireach.com, LLC v. Walker*, 719 S.E.2d 489, 494 (Ga. 2011). None of the annual registrations in the record were signed by him. The 2017 and 2018 registrations were signed by someone else listed as an "Authorized Person," and every registration from 2019 through 2026 was signed by "Alexander Newman, Attorney In Fact." (Doc. 21-5 at 2–10; Doc. 21-4 at 2). Therefore, the assumption does not decide the question.

Under *Diamond Crystal*, whether Ms. Mayers's claims arise from or are connected with that act is part of the due process inquiry, which the Court takes up below.[3]

**2. Tortious Act or Omission**

Subsection (2) is not available to Ms. Mayers. Georgia courts have ruled that, "when a defendant uses the telephone or email to contact a Georgia resident," the "defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email." *LabMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013) (citing *Anderson v. Deas*, 632 S.E.2d 682, 684 (Ga. Ct. App. 2006)). The statute covers acts a defendant commits "in person or through an agent." O.C.G.A. § 9-10-91. But Ms. Mayers does not allege that Mr. Jackson was physically present in Georgia when the calls and texts at issue were sent. She alleges, on information and belief, that he lives in Texas. (Doc. 5-1 ¶ 50). Nor does she allege that Mr. Jackson personally placed the calls or sent the texts himself. She alleges instead that he was "causing" the texts to be sent, "orchestrating" the calls, and "directing his agents to threaten Plaintiff and her family." (*Id.* ¶ 52). The First Amended Complaint never states that he, or anyone acting for him, was in Georgia

---

[3] Other decisions apply all three elements of the *Aero Toy Store* test together when deciding whether subsection (1) supports jurisdiction. *See Henriquez*, 500 F. App'x at 828; *Amerireach*, 719 S.E.2d at 496. *Diamond Crystal* treats the second and third elements as part of the due process inquiry and requires a long-arm assessment "separate and apart from the due process analysis." 593 F.3d at 1260 n.11. The Court follows *Diamond Crystal*. The result would be the same under either approach, for the reasons given in Section B.

when the calls and texts were made. Under the rule above, that conduct occurred where the caller or sender was. Ms. Mayers cannot rely on subsection (2), the "commits a tortious act . . . within this state" prong of the statute.

**3. Persistent Course of Conduct or Substantial Revenue**

Subsection (3) applies to a nonresident who, in person or through an agent, "[c]ommits a tortious injury in this state caused by an act or omission outside this state," but only if the nonresident also "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3). A tortious injury in Georgia is therefore not enough. The defendant must also satisfy one of the other conditions. *Anderson*, 632 S.E.2d at 683 (adhering to earlier holding that, although the defendant "may have committed a tortious injury in this state," Georgia courts lacked jurisdiction over him under subsection (3) because he had "not met any of the other requirements" it imposes). Subsection (3) also reaches less broadly than due process permits, so its requirements must be satisfied on their own. *Amerireach*, 719 S.E.2d at 495 (noting that subsection (3) "does not confer jurisdiction" to "the fullest extent permitted by constitutional due process" (quoting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 354 (Ga. 2005)).

Ms. Mayers alleges that Mr. Jackson caused a tortious injury in Georgia. She points to threatening text messages sent to her Georgia phone number, harassing phone calls she received at her Georgia residence, and predawn calls delivered to her in Georgia, including two voicemails on August 3, 2024, in which the caller sang, "bang bang, I shot you down." (Doc. 5-1 ¶¶ 36–37, 52, 117–118). The Court assumes without deciding that these allegations satisfy subsection (3)'s tortious-injury requirement, because Ms. Mayers's claim fails on the remaining requirements. *Cf. Anderson*, 632 S.E.2d at 683.

Courts consider several factors when deciding whether subsection (3) reaches a nonresident. They ask whether the defendant regularly does or solicits business in Georgia, engages in a persistent course of conduct there, derives substantial revenue from services rendered there, has employees located there, or is authorized to do business there. *LabMD*, 509 F. App'x at 845 (citing *Gust v. Flint*, 356 S.E.2d 513, 514 (Ga. 1987)).

Ms. Mayers cannot show that Mr. Jackson "regularly does or solicits business" or "engages in any other persistent course of conduct" in Georgia. She again relies on G-Unit's corporate presence in Georgia: its certificate of authority since 2017, its registered agent in DeKalb County, and its annual registrations every year since, most recently on February 11, 2026. (Doc. 21 at 13; Doc. 21-4 at 2;

Doc. 21-5 at 2–10). She argues that, because Georgia does not recognize the fiduciary-shield doctrine, these are Mr. Jackson's own contacts. (Doc. 21 at 13).

Unfortunately, *Amerireach* does not help Ms. Mayers. That case arose under subsection (1), which the court called "the only portion of Georgia's long-arm statute on which Dr. Walker's complaint bases personal jurisdiction over the individual defendants." *Amerireach*, 719 S.E.2d at 493. Its "primary participants" finding rested on allegations that the individual defendants had "directly facilitated" the corporation's "transaction of business in Georgia resulting in the unlawful conduct set forth" in the complaint and had "been physically present in Georgia facilitating the unlawful conduct." *Id.* at 496. The opinion mentions subsection (3) only to say that it does not confer jurisdiction to the fullest extent due process allows. *Id.* at 495.

G-Unit's certificate of authority speaks to the authorization factor, but the authorization belongs to the corporation and not to Mr. Jackson. A corporation's registration to do business in Georgia and its registered agent being here do not, standing alone, show that Mr. Jackson personally does or solicits business in Georgia. Nor do they show that he personally engages in a persistent course of conduct there. Courts applying subsection (3) to a corporate officer look at the officer's own conduct. *See Canty v. Fry's Elecs., Inc.*, 736 F. Supp. 2d 1352, 1360–61 (N.D. Ga. 2010) (no jurisdiction under subsection (3) over a company's president

where there was no evidence that he, “as an individual,” regularly did or solicited business or engaged in a persistent course of conduct in Georgia, even though the plaintiff had worked at the company’s store in the state).

The calls and texts do not satisfy either requirement. As with subsection (2), the conduct occurs where the caller speaks into the telephone, not where the call is received. Repeated calls into Georgia from another state are therefore not a persistent course of conduct in Georgia. *Anderson*, 632 S.E.2d at 684 (defendant ”did not engage in any conduct, persistent or otherwise, in Georgia” when he made daily phone calls to his daughter or calls that allegedly threatened and harassed the plaintiff). The same reasoning means that those calls do not show Mr. Jackson regularly doing or soliciting business in Georgia.

Finally, Ms. Mayers neither alleges nor argues that Mr. Jackson “derives substantial revenue from goods used or consumed or services rendered in” Georgia. Her subsection (3) theory rests entirely on G-Unit’s corporate contacts, not on his personal earnings from music, touring, or any other business. Subsection (3) therefore does not reach Mr. Jackson. Because subsection (2) does not reach him either, only subsection (1) remains. As explained above, the Court assumes that Mr. Jackson’s 2017 signature was an act of transacting business in Georgia, and whether Ms. Mayers’s claims arise from that act is part of the due process inquiry, to which the Court now turns.

**B. Due Process**

Even if the long-arm statute applies, the Court must also consider whether the Fourteenth Amendment's Due Process Clause nonetheless precludes the exercise of personal jurisdiction over Mr. Jackson. Due process allows specific jurisdiction over a nonresident only if he purposefully established "minimum contacts" with the forum, and only if exercising jurisdiction over him comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 320 (1945)). In this circuit, the defendant must have "purposefully availed" himself of the privilege of conducting activities in the forum, and there must be a sufficient nexus between those contacts and the litigation. *Diamond Crystal*, 593 F.3d at 1267. If the plaintiff makes both showings, the defendant must make a "compelling case" that jurisdiction would offend fair play and substantial justice. *Id.*

First, Ms. Mayers has not shown that Mr. Jackson purposefully availed himself of Georgia through the calls and texts or the registrations filed after 2017. Purposeful availment turns on contacts the defendant himself creates with the forum. As the Supreme Court has explained, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). Knowing that a plaintiff lives in the forum, or that she will feel the effects of the defendant's conduct there, does not supply that connection.

*Id.* at 289. The question is whether the defendant's conduct connects him to the forum "in a meaningful way." *Id.* at 290. The plaintiff "cannot be the only link between the defendant and the forum." *Id.* at 285.

The First Amended Complaint relies on the calls and texts that Ms. Mayers received. (Doc. 5-1 ¶ 52). It alleges that Mr. Jackson caused or directed them and that he knew Ms. Mayers lived in Georgia. (*Id.*). Even taking those allegations as true, the calls and texts were aimed at Ms. Mayers, not at Georgia. That she was in Georgia shows where she felt their effect, not that Mr. Jackson connected himself to the state. Mere injury to a forum resident is not a sufficient connection to the forum. *Walden*, 571 U.S. at 290 (explaining that *Calder v. Jones*, 465 U.S. 783 (1984), "made clear" this point).

Ms. Mayers relies instead on G-Unit's certificate of authority, its Georgia agent, and its annual registrations. She argues that these are "quintessential acts" of purposeful availment, that Mr. Jackson was G-Unit's sole officer, and that these contacts tie him to Georgia "independently of Plaintiff." (Doc. 21 at 14–15). A connection that does not run through the plaintiff must still be the defendant's own. The only act in the record that Mr. Jackson took himself is signing the 2017 application. (Doc. 21-3 at 3). Others signed every annual registration from 2017 through 2026. (Doc. 21-5 at 2–10; Doc. 21-4 at 2). Because Ms. Mayers's claims do

not arise out of or relate to the 2017 application, as explained next, the Court need not decide whether it shows purposeful availment.

Second, Ms. Mayers has not shown that her claims arise out of or relate to the 2017 application, the one Georgia contact that could support jurisdiction. Her claims "must arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)). The phrase "relate to" does not require a strict causal relationship, but it "incorporates real limits." *Id.* at 362. The contacts in *Ford* show the kind of connection that suffices. Ford had "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 365. Mr. Jackson's signature on a corporate registration in 2017 has no comparable link to the harassment that Ms. Mayers alleges.

Ms. Mayers argues that her claims arise from her work for Mr. Jackson, through "the alleged exploitation of the contact information and relationship built through that employment." (Doc. 21 at 15). Her employment is not a contact between Mr. Jackson and Georgia. The First Amended Complaint alleges that she lives in Georgia (Doc. 5-1 ¶ 49), but not that she worked in Georgia or for a Georgia-registered corporation. Her brief says that she did (Doc. 21 at 15), but it points to no allegation or evidence for that statement. The First Amended

Complaint alleges that Mr. Jackson ended her employment on March 27, 2019, and that the harassment began afterward, with incidents documented from January 2020 through March 2026. (Doc. 5-1 ¶¶ 18, 22, 88). Ms. Mayers says that "[w]hether and how Jackson's Georgia enterprise relates to the conduct at issue" is "a factual question." (Doc. 21 at 15). But she identifies no allegation or evidence connecting the harassment to G-Unit's Georgia registration, agent, or filings. Ms. Mayers's claims therefore do not arise out of or relate to the 2017 application.

Third, the fair play requirement applies only if the plaintiff first shows purposeful availment and relatedness. Once she does, the defendant must make a "compelling case" that exercising jurisdiction would offend fair play and substantial justice. *Diamond Crystal*, 593 F.3d at 1267. Ms. Mayers has not shown relatedness, so the burden never shifts to Mr. Jackson.

In sum, Ms. Mayers has failed to show that exercising personal jurisdiction over Mr. Jackson comports with due process. The Court therefore does not need to reach Mr. Jackson's remaining arguments.

**C. Jurisdictional Discovery**

Ms. Mayers also asks for jurisdictional discovery if the Court finds the record insufficient. (Doc. 21 at 15–16). A plaintiff has a qualified right to jurisdictional discovery. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999). That right is not automatic. The cases Ms. Mayers cites involved plaintiffs

who had noticed depositions or told the court what discovery would show. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729–30 (11th Cir. 1982) (plaintiffs had noticed depositions and served subpoenas duces tecum before the district court dismissed the suit); *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 902–03 (11th Cir. 1984) (counsel argued at a hearing what discovery would show).[4] Ms. Mayers has made no relevant allegations in the First Amended Complaint which discovery could substantiate and has offered no guidance on what subjects she seeks discovery. *See Posner*, 178 F.3d at 1214 n.7 (plaintiffs "failed to specify what they thought could or should be discovered"). Accordingly, the Court will deny the request.

## Conclusion

For the reasons given above, the Clerk is **DIRECTED** to docket Plaintiff's Proposed First Amended Complaint (Doc. 5-1) as her First Amended Complaint. It is

[4] As Mr. Jackson points out, *Eaton* and *Majd-Pour* both involved dismissals for lack of subject-matter jurisdiction, not personal jurisdiction. (Doc. 22 at 14 n.7).

**ORDERED** that Defendant's Motion to Dismiss (Doc. 16) is **GRANTED IN PART** to the extent it seeks dismissal based on lack of personal jurisdiction. It is

**FURTHER ORDERED** that this civil action is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED** this 18th day of November, 2026.

Victoria Marie Calvert
United States District Judge